THOMAS BROADHURST *vs.* CITY OF FALL RIVER.

Bristol.     January 7, 1932. — January 25, 1932.

Present: RUGG, C.J., CROSBY, WAIT, SANDERSON, & FIELD, JJ.

*Fall River.   Pension.   Constitutional Law*, Control of municipalities. *Municipal Corporations*, Control by General Court.

Sections 8 and 16 of St. 1931, c. 44, an act "authorizing the city of Fall River to fund certain indebtedness and establishing a board of finance for said city," override every inconsistent power conferred by St. 1924, c. 278, relating to pensioning laborers in Fall River.

A pension, granted by the mayor of Fall River under St. 1924, c. 278, after the effective date of St. 1931, c. 44, is not an obligation binding the city unless and until approved by the Fall River board of finance.

Sections 8 and 16 of St. 1931, c. 44, are constitutional.

CONTRACT, with a declaration as amended described in the opinion. Writ dated August 3, 1931.

The defendant demurred. The demurrer was heard in the Superior Court by *T. J. Hammond*, J., and was sus-

tained. A motion by the defendant that judgment be entered in its favor was allowed. The plaintiff appealed.

*J. T. Farrell,* for the plaintiff.

*E. T. Murphy,* Corporation Counsel, (*H. K. Hudner* with him,) for the defendant.

Rugg, C.J. The plaintiff alleges in his declaration that certain instalments of a pension granted him on June 10, 1931, on retirement from the labor service of the defendant for incapacity, by the mayor of the defendant in accordance with St. 1924, c. 278, are due to him; that there is available sufficient appropriation to pay said instalments, and that the defendant refuses payment. The defendant demurs on the ground that the mayor had no authority to grant such pension without the approval of the Fall River board of finance established by St. 1931, c. 44, and that the declaration contains no allegation of such approval. The demurrer was sustained, motion was allowed for the entry of judgment for the defendant, and the plaintiff appealed.

The question presented for decision is whether a pension granted by the mayor under St. 1924, c. 278, is a binding obligation upon the defendant unless and until approved by the Fall River board of finance established by St. 1931, c. 44, in force and effect at the times of the events here in issue. Said c. 278 relates to the pensioning of laborers in the city of Fall River. It is applicable only to that city. It provides in § 1 that a laborer in the employ of that city in the position of the plaintiff "may, at his request and with the approval of the mayor, be retired from service, and if so retired he shall receive from said city for the remainder of his life an annual pension" of a stated amount. If that statute alone be considered, the plaintiff is entitled to receive payments on the pension. Every condition there prescribed has been met. But in this connection the scope and effect of St. 1931, c. 44, must be considered. That is entitled "An Act authorizing the city of Fall River to fund certain indebtedness and establishing a board of finance for said city." The design of that chapter, as disclosed by all its provisions, is to create a board of finance, consisting of three persons to be appointed

by the Governor, only one of whom need be a resident of Fall River, and to vest in that board complete control over all the financial affairs of that city. That general purpose is set forth in § 8 in these words: "The board shall have supervision over the financial affairs of said city, and no appropriations shall be made, and no debt incurred, except with the approval or upon the recommendation or requisition of the board, which approval, recommendation or requisition shall be in writing. No department of said city, including, without limiting the generality of the foregoing, the school and police departments, shall expend any money or incur any liability except with the written approval of the board." The sweeping nature of that general purpose and the intention that nothing shall stand in its way are emphasized by this sentence in § 16: "The operation of such part of any statute as is inconsistent with the provisions of this act, in so far and to the extent that it applies to the city of Fall River or to any of its interests or affairs, shall be suspended so long as the powers and duties of the board continue to be in effect hereunder." The inescapable result of these provisions is that said c. 44 must override every inconsistent power conferred by said c. 278, under which the plaintiff claims.

The granting of a pension by a municipality is a factor in its financial affairs. A pension is definite in amount, lasts during the life of the pensioner, and must be disbursed regularly out of the public treasury without any concurring service rendered by the pensioner for the public. It constitutes a settled and positive liability. It is an addition to the fixed annual charges of the city. It would be vain to place entire responsibility for the financial affairs of the city on the board of finance, if without its cognizance or sanction expenses of this nature could be fastened upon the municipal treasury. The granting of the pension to the plaintiff was contrary to the first sentence of said § 8. It also, in our opinion, is within the prohibition of the second sentence of that section. That inhibition against incurring liability except with the written approval of the board runs against every department of the city. It is not neces-

sary to inquire with nicety whether under every form of city charter the mayor constitutes a department in a technical sense. It is common speech to refer to the chief officer of a city as the head of the executive department, or as that department. Compare *Daly* v. *Mayor of Medford*, 241 Mass. 336, 338. As used in this context, we think that the word signifies every instrumentality of the city government empowered to incur liability for the expenditure of money. *King* v. *Mayor of Quincy*, 270 Mass. 185, 187, and cases cited. In no other way can the dominant and permeating object of the statute be given effect. This broad meaning is not cut down by the later provision in the same section authorizing the board of finance to make recommendations in writing to various commissions, committees, boards and officers. That provision is directed to a different end and is in no way inconsistent with the wide meaning manifestly attaching to "department" in the early part of the section. It hardly need be added that liabilities resting upon the city *in invitum*, such as State and county taxes and judgments of courts, do not fall within this section. The pension sought to be recovered by the plaintiff is different in origin and nature.

It follows that, as matter of statutory construction, the granting of the pension to the plaintiff by the mayor, without approval by the board of finance, imposed no liability upon the defendant.

The plaintiff assails the constitutionality of St. 1931, c. 44. He has standing to raise this question only respecting those parts of the statute which harm his rights involved in the issues of the case at bar. He cannot require consideration of other provisions. *Lufkin* v. *Lufkin*, 182 Mass. 476, 479. *McGlue* v. *County Commissioners*, 225 Mass. 59, 60, and cases collected. *Horton* v. *Attorney General*, 269 Mass. 503, 514. *Hogarth-Swann* v. *Weed*, 274 Mass. 125. Therefore, it is not necessary to discuss the elaborate argument of the plaintiff directed to specific parts of the act not touching his right to a pension.

The several towns and cities are instrumentalities of

government largely under the control of the General Court. Their powers and duties may be changed and may be vested in officers appointed by the Governor instead of those selected by the people or by other municipal authorities, provided the Legislature deems in its wisdom that the public welfare requires it. Financial affairs constitute fundamental and underlying aspects of the administration of municipalities. There is no sound reason to doubt the power of the General Court to segregate that part of the government of a city from its other affairs and place its management exclusively in a board created and appointed as is that established by St. 1931, c. 44. The board of finance constitutes a division of the government of the city. Its duties are public. The statute makes a change in forms and methods of municipal administration. It does not deprive the city of its private property. It does not constitute a delegation of power reserved to the General Court. There is no tenable ground on which to distinguish the board of finance in its establishment and powers under § 8 from statutes vesting control of the police force of a city in an appointee or appointees of the Governor. The case upon this point is so thoroughly settled by our decisions as to require no further discussion. *Commonwealth* v. *Plaisted,* 148 Mass. 375, 383–387. *Weymouth & Braintree Fire District* v. *County Commissioners,* 108 Mass. 142. *Graham* v. *Roberts,* 200 Mass. 152. *Duffy* v. *Treasurer & Receiver General,* 234 Mass. 42, 50–51. *Prince* v. *Crocker,* 166 Mass. 347. *Boston* v. *Treasurer & Receiver General,* 237 Mass. 403. *Chelsea* v. *Treasurer & Receiver General,* 237 Mass. 422, 431. *Trustees of Boston Public Library* v. *Rector of Trinity Church,* 263 Mass. 173, 179. *Sullivan* v. *Lawson,* 267 Mass. 438.

It is provided by § 18 of said c. 44, that, "If any part, clause, subdivision or section of this act shall be declared unconstitutional the validity of its remaining provisions shall not be affected thereby."

We are of opinion that no part of said c. 44 affecting the claim of the plaintiff here sought to be enforced contra-

venes any provision of the Constitution.  The order sustaining the demurrer and the order that judgment be entered for the defendant are

´ *Affirmed.*