JACOB J. KAPLAN & others *vs.* PHILIP BOWKER & others.

Suffolk.   November 8, December 28, 1955. — January 19, 1956.

Present: QUA, C.J., RONAN, WILKINS, WILLIAMS, & WHITTEMORE, JJ.

*Constitutional Law,* Who may question constitutionality, Public rights and interests. *Special Commission.*

Persons who themselves suffered no legal harm by reason of the legislative mandate, given to the special commission existing under Res. 1953, c. 89; 1954, c. 123; 1955, c. 52, for the purpose of investigating communism and subversive activities, to include in its report to the General Court "the name and all other identifying data available to

the commission, of any individual, concerning whom, the commission, during the course of the investigation, has received creditable evidence that such individual was or is a member of the communist party, a communist or a subversive," had no standing as members of the bar, members of the general public, and taxpayers, voters and citizens of the Commonwealth to maintain a mandamus proceeding to compel the commission to refrain from complying with such mandate on the ground that it was unconstitutional.

PETITION for a writ of mandamus, filed in the Supreme Judicial Court for the county of Suffolk on March 31, 1955.

After hearing, *Counihan,* J., ordered that judgment be entered dismissing the petition.

*Richard Wait,* (*B. Loring Young* with him,) for the petitioners.

*Thomas H. Bresnahan,* for the respondents.

QUA, C.J.   By c. 123 of the Resolves of 1954 and again by c. 52 of the Resolves of 1955, the General Court revived and continued a special commission, consisting of two members of the Senate, three of the House, and two persons appointed by the Governor, which was originally established by c. 89 of the Resolves of 1953 "for the purpose of conducting an investigation and study of the extent, character and objects of communism and subversive activities and related matters within the commonwealth; the diffusion within the commonwealth of subversive and un-American propaganda that is instigated from foreign countries, or of a domestic origin, and attacks the principle of the form of government as guaranteed by our constitution and all other questions in relation thereto that would aid the general court in enacting any necessary remedial legislation." The resolve directs the commission in making its investigation to consider all the aspects of such activities, including educational, governmental, industrial, and political activities. There are included in the resolve various provisions not necessary to be stated in full designed to clarify the subject under investigation and to secure to witnesses at hearings before the commission the advice of counsel and the right to make statements in their own behalf which shall become part of the records of the hearings.

The resolve in its present form contains these sentences, "Said commission shall report its findings to the general court at such time or times as it may deem advisable, but in any event shall file a final report not later than the first day of February, nineteen hundred and fifty-six. Such report shall include the name and all other identifying data available to the commission, of any individual, concerning whom, the commission, during the course of the investigation, has received creditable evidence that such individual was or is a member of the communist party, a communist or a subversive."

The proceeding now before us is a petition for a writ of mandamus brought against the members of the commission by five members of the bar who allege that they are citizens, voters and taxpayers in the Commonwealth, interested in the execution of the laws and in the enforcement of the Constitution; that it is a felony to advocate the overthrow by force or violence or other unlawful means of the government of the Commonwealth or of the United States (G. L. [Ter. Ed.] c. 264, § 11, as appearing in St. 1954, c. 584, § 1), or to be a member of the Communist Party or to engage in the communist or subversive activities described in G. L. (Ter. Ed.) c. 264, §§ 16–19 and 21–23, inserted by St. 1951, c. 805, § 3, and as amended by St. 1954, c. 584, §§ 3–5; that the inclusion of the names in the commission's report would constitute a determination that there is "creditable evidence" that the persons named are guilty of a felony and would be a legislative declaration of a felony in violation of art. 25 of the Declaration of Rights and would be an exercise of executive or judicial power in violation of art. 30 of the Declaration of Rights and a deprivation of liberty of an indeterminable number of citizens without due process of law. The prayer is that the respondents be commanded to refrain from including in any report the name or other identifying data of any individual concerning whom the commission determines that it has received "creditable evidence" that such individual was or is a member of the Communist Party, a communist or a subversive, "except

when if ever the inclusion of the name of any such individual is necessary for the purpose of recommending proposed legislation."

Nowhere in the petition is there any allegation that the commission has been or is investigating any of the petitioners; or that any of them has been called upon to testify before it or has been approached in any way by or in behalf of the commission; or that any of them has any reason to expect that his name will be mentioned by the commission; or that any of them has engaged in any activities that might bring him to the notice of the commission. In their brief they expressly disclaim that they individually or collectively suffer any wrong peculiar to themselves and assert that they bring this petition as members of the general public, taxpayers, voters, and citizens of the Commonwealth "fairly representative of their millions of fellows every one of whom is harmed through exercise of arrogated power by the Legislature," and that as members of the bar they are under special obligation to assert rights which they conceive they share with other members of the public who may be less conscious of the nature of the threatened infringement of those rights. Their contentions are that the resolve is unconstitutional in its mandate to the commission to report a "black list" of persons concerning whom the commission has received "creditable evidence" that they are or were communists, members of the Communist Party, or "subversives"; that no standard is provided for determining what is "creditable evidence" or who is a subversive; that the door is left open for determinations based upon hearsay without any of the safeguards of due process; that (as the petitioners assert) such list cannot be of any assistance to the General Court in enacting remedial legislation; that the resolve violates art. 25 of the Declaration of Rights, which forbids the Legislature to declare any subject guilty of treason or felony and art. 30 relative to the separation of powers; that it is a bill of attainder; and that the inclusion of the "black list" is an injury to every person within the jurisdiction.

The single justice of this court before whom the case first came ruled as matter of law that the petitioners have no standing to maintain this petition and entered judgment dismissing it. The petitioners appeal. We think the ruling was right.

From an early day it has been an established principle in this Commonwealth that only persons who have themselves suffered, or who are in danger of suffering, legal harm can compel the courts to assume the difficult and delicate duty of passing upon the validity of the acts of a coördinate branch of the government. Many instances of the statement or the application of this principle are collected in the footnote.[1] This rule is by no means peculiar to this jurisdiction. It is generally accepted elsewhere. *Tyler v. Judges of the Court of Registration,* 179 U. S. 405. *Lampasas v. Bell,* 180 U. S. 276. *Smith v. Indiana,* 191 U. S. 138, 148–149. *Massachusetts v. Mellon,* 262 U. S. 447, 488–489. *Columbus & Greenville Railway v. Miller,* 283 U. S. 96, 99–100. *Perkins v. Lukens Steel Co.* 310 U. S. 113, 125–132. *Doremus v. Board of Education of the Borough of Hawthorne,* 342 U. S. 429. 16 C. J. S., Constitutional Law, § 76, and cases cited. 11 Am. Jur., Constitutional Law, § 111, and cases cited. It may indeed be regarded as hardly more than an illustration of the general proposition that parties to actions must be persons interested in the subject matter. 67 C. J. S., Parties, § 6, and cases cited.

---

[1] *Wellington, petitioner,* 16 Pick. 87, 96–98. *Hingham & Quincy Bridge & Turnpike Corp.* v. *County of Norfolk,* 6 Allen, 353, 356–357. *Pearsons* v. *Ranlett,* 110 Mass. 118, 126. *Prince* v. *Crocker,* 166 Mass. 347, 362. *Attorney General* v. *Provident Institution for Savings,* 201 Mass. 23, 25. *Higginson* v. *Treasurer & School House Commissioners of Boston,* 212 Mass. 583, 593. *McGlue* v. *County Commissioners of Essex,* 225 Mass. 59, 60–61. *International Paper Co.* v. *Commonwealth,* 228 Mass. 101, 115. *Attorney General* v. *Methuen,* 236 Mass. 564, 580–581. *Warner* v. *Mayor of Taunton,* 253 Mass. 116, 119. *Horton* v. *Attorney General,* 269 Mass. 503, 513–514. *Brest* v. *Commissioner of Insurance,* 270 Mass. 7, 19. *Lexington* v. *Bean,* 272 Mass. 547, 550–551. *Broadhurst* v. *Fall River,* 278 Mass. 167, 170. *Mullholland* v. *State Racing Commission,* 295 Mass. 286, 292. *Commonwealth* v. *Brown,* 302 Mass. 523, 526. *Graham* v. *Special Commissioners of Suffolk County,* 306 Mass. 237, 241. *Nichols* v. *Commissioner of Public Welfare,* 311 Mass. 125, 130. *Morrissey* v. *State Ballot Law Commission,* 312 Mass. 121, 135–136. *Landers* v. *Eastern Racing Association, Inc.* 327 Mass. 32, 43. *Assessors of Haverhill* v. *New England Telephone & Telegraph Co.* 332 Mass. 357, 362. *Fournier* v. *Troianello,* 332 Mass. 636, 640.

But the petitioners seek to bring themselves within another principle of law which may sometimes cut under and form an exception to the principle that only a party injured can bring proceedings to determine the constitutionality of a statute. This is the principle that where a public officer owes a specific duty to the public to perform some act or service not due the government as such or to administer some law for the public benefit which he is refusing or failing to perform or administer any member of the public may compel by mandamus the performance of the duty required by law. Perhaps the leading case in this Commonwealth is *Brewster* v. *Sherman*, 195 Mass. 222. In such cases the petitioner is regarded as acting under the public right to have the particular thing or series of things done which the law requires shall be done. Some of the cases add the qualification that no other method of enforcement be available. We believe we have examined every case in this Commonwealth in which this principle has been discussed or applied. Many are cited in the footnote.[1] All, we think, respond to the test which we have just endeavored to state. We do not see how this case can be brought within this principle. The respondent commissioners owe no duties directly to the public of which the public has the right to demand performance. Their duty is merely to investigate and to report facts to the General Court upon which that body may take such action, if any, as it sees fit. Of course the commissioners, like other people, are obligated to obey the law, but that obligation, without more, is not a sufficient

[1] *Brewster* v. *Sherman*, 195 Mass. 222. *Sinclair* v. *Mayor of Fall River*, 198 Mass. 248, 256–257. *Cox* v. *Segee*, 206 Mass. 380, 381. *Attorney General* v. *Suffolk County Apportionment Commissioners*, 224 Mass. 598, 610. *Loring* v. *Young*, 239 Mass. 349, 357–358. *Kelley* v. *Board of Health of Peabody*, 248 Mass. 165, 169. *O'Brien* v. *Turner*, 255 Mass. 84, 86. *Bancroft* v. *Building Commissioner of Boston*, 257 Mass. 82, 84–86. *Brooks* v. *Secretary of the Commonwealth*, 257 Mass. 91, 92–94. *Police Commissioner of Boston* v. *Boston*, 279 Mass. 577, 585–586. *D. N. Kelley & Son, Inc.* v. *Selectmen of Fairhaven*, 294 Mass. 570, 574. *Cape Cod Steamship Co.* v. *Selectmen of Provincetown*, 295 Mass. 65, 69. *Pettengell* v. *Alcoholic Beverages Control Commission*, 295 Mass. 473, 474–475. *Fitzgerald* v. *Selectmen of Braintree*, 296 Mass. 362, 363. *Moore* v. *Election Commissioners of Cambridge*, 309 Mass. 303, 304–305. *Parrotta* v. *Hederson*, 315 Mass. 416, 418. *Sears* v. *Treasurer & Receiver General*, 327 Mass. 310, 314–315. *Sunderland* v. *Building Inspector of North Andover*, 328 Mass. 638. *Ames* v. *Attorney General*, 332 Mass. 246, 254.

ground for action by persons who are not injured.   As was said in *Police Commissioner of Boston* v. *Boston,* 279 Mass. 577, at page 585, "The enforcement of any law, though it affects only private rights, is in a broad sense matter of public interest, but some more direct interest of citizens generally must be shown to entitle a citizen without private interest to a writ of mandamus." The case of *Horton* v. *Attorney General,* 269 Mass. 503, is a useful illustration. It was there held that the court could inquire at the instance of private citizens into the then present constitutional duty of the Attorney General and the Secretary of the Commonwealth in dealing with an initiative petition (pages 508–509); but it was further said in substance that even if the proposed law had been enacted the court could inquire into its general constitutionality only at the instance of some person whose liberty, rights, or property was invaded through its operation (pages 513–514).   See also *Nichols* v. *Commissioner of Public Welfare,* 311 Mass. 125, 130; *Bowe* v. *Secretary of the Commonwealth,* 320 Mass. 230, 246.

*Judgment affirmed.*